IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

IN THE MATTER OF:          )
                                   )    Case No.  17-42759-drd11
OSAGE WATER COMPANY,    )
                                   )
               Debtor.    )

**TRUSTEE'S MOTION TO APPROVE (A) THE SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, INTERESTS, CLAIMS AND ENCUMBRANCES AND RELATED PROCEDURES AND BID PROTECTION PURSUANT TO 11 U.S.C. § 363, (B) THE POTENTIAL ASSUMPTION AND ASSIGNMENT, OR REJECTION, OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND RELATED PROCEDURES, PURSUANT TO 11 U.S.C. § 365,  AND (C) RELATED RELIEF PURSUANT TO 11 U.S.C. §§ 102 AND 105**

Jill Olsen ("Trustee"), as Chapter 11 trustee of debtor Osage Water Company ("Debtor"), by and through counsel, for her Motion to Approve (a) the Sale of Substantially All of Debtor's Assets Free and Clear of All Liens, Interests, Claims and Encumbrances, and Related Procedures and Bid Protection Pursuant to 11 U.S.C. § 363, (b) the Potential Assumption and Assignment, or Rejection, of Certain Executory Contracts and Unexpired Leases, and Related Procedures, Pursuant to 11 U.S.C. § 365, and (c) Related Relief Pursuant to 11 U.S.C. §§ 102 and 105 (the "Motion"), states and alleges as follows:

## BACKGROUND

### Procedural Posture

1.      On October 11, 2017, (the "Petition Date"), Debtor filed its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Code").

2.      On or about October 26, 2017, Trustee was appointed as the Chapter 11 Trustee of Debtor.

3.      This is a core proceeding pursuant to 28 U.S.C. § 157(2)(A), (M), (N) and (O).

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

## Nature of Pre-Petition Date Business Operations

6.      Debtor is a corporation organized under Missouri law.

7.      Debtor owns, operates, and controls property in the distribution and sale of water to residents of Camden County, Missouri for gain ("Water Supply Systems").

8.      Debtor also owns, operates, and controls property, including pipes, pumps, structures, appliances, and other real and personal property in connection with the collection, carriage, treatment and disposal of sewage for residents of Camden County, Missouri for gain ("Sewer Systems").

9.      Debtor owns, operates, and controls Water Supply Systems and Sewer Systems in Camden County, Missouri, located at (i) Cedar Glen Condominiums; (ii) Chelsea Rose Subdivision; (iii) Harbor Bay Condominiums; and (iv) Eagle Woods Subdivision (collectively, "Operational Systems").

10.     Debtor also owns non-operational Water Supply Systems and Sewer Systems in Camden County, Missouri, located at Osage Beach Parkway ("Non-Operational Systems, and together with the Operational Systems, "Water Systems") (Water Systems, together with all other of Debtor's right, title, and interest in real and personal property, the "Assets"). The Assets include customer deposits held by the Trustee (the "Customer Deposits").

11.     In 2002, Debtor had three principals: Dave Hancock, Pat Mitchell, and Greg Williams.

12.     In a report and order dated December 10, 2002 (the "PSC Order"), the Missouri Public Service Commission (the "PSC") determined Debtor had been effectively abandoned by its owners and that it was unable or unwilling to provide safe and adequate service to its customers.

2

13.     The PSC Order recommended its staff seek the appointment of a receiver to take control and responsibility of the company. The PSC Order also recommended its staff seek a determination from the circuit court that Debtor should not be returned to its owners but rather should be liquidated by the receiver.

14.     On October 21, 2005, the Circuit Court of Camden County (the "State Court") appointed Gary Cover receiver of Debtor (the "Receiver").

### Pre-Petition Date and Post-Petition Date Marketing Efforts

15.     The Receiver marketed the Assets prepetition, receiving multiple bids from 2014 to 2017.

16.     In the Receiver's report to the State Court dated January 14, 2015, the Receiver reported the following bids: (1) Central States Water Resources, Inc., $479,702.00; (2) Missouri American Water Company, $250,000.00; (3) Cedar Glen Condominium Owners Association, Inc., Missouri Water Association, Inc., and Lake Area Waste Water Association, Inc. (joint bidders), $160,000.00; and (4) Gregory Williams, satisfaction of judgment obtained in Case No. 09CM-CC00413.

17.     In the Receiver's report to the State Court dated May 12, 2017, the Receiver reported the following bids: (1) Central States Water Resources, Inc., $440,000.00; (2) Public Water Supply District # 5, $636,000.00 (Cedar Glen service area only); (3) Patrick Mitchell, $5,000.00 (all assets except Cedar Glen service area); and (4) Gregory Williams, satisfaction of judgment obtained in Case No. 09CM-CC00413.

18.     None of the prepetition bids resulted in a sale.

19.     The Trustee has contacted entities that expressed interest in the Assets prepetition as well as other entities.

WA 11145717.5

## The APA and Sale Process

20.     Good-faith and arms-length negotiations have resulted in the Trustee entering an asset purchase agreement (the "Stalking Horse APA")[1] with Central States Water Resources, Inc. (the "Stalking Horse Purchaser"). The Stalking Horse APA provides for, among other things, the sale of substantially all of Debtor's Assets, or portions thereof, free and clear of any and all liens, claims, encumbrances and other interests (the "Transaction").

21.     Trustee proposes to effectuate the Transaction(s) via the process and procedures outlined in the Bid Procedures (as defined below) in order to determine the highest and best bidder or bidders to enter into the Transaction(s) under the Timeline provided below.

## RELIEF REQUESTED

### Introduction

22.     Pursuant to Code §§ 102, 105, 363 and 365 and Rules 2002, 6004, 6006, 9006 and 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Trustee requests the Court, *inter alia*, (a) approve the bid procedures ("Bid Procedures") attached as Exhibit A to the proposed Order ("Bid Procedures Order") attached hereto as **Exhibit 1**, (b) approve the form and manner of notice of the Bid Procedures, the Sale Hearing (as defined below), the Objection Deadline, the respective dates, times and places for an auction, if required under the Bid Procedures, and the possible assumption and assignment, or rejection, of executory contracts and unexpired leases and rights thereunder, substantially in the form attached as Exhibit B to the Bid Procedures Order (the "Transaction Notice"), (c) approve the Stalking Horse APA and Bid Procedures as set forth in the Bid Procedures Order, (d) establish procedures for objections to the Sale Motion and for determining cure amounts in connection with the assumption and

---

[1] The attached Stalking Horse APA is unexecuted. The Trustee anticipates receiving signatures pages in the near term.

WA 11145717.5

assignment of executory contracts and unexpired leases and rights thereunder, and (e) set a hearing on the Sale Motion.

### Summary of Key Provisions

| Event | Date and Time (if applicable) |
| --- | --- |
| Transaction Notice | Within seven (7) days of the entry of the Bid Procedures Order |
| Notice to Contract/Lease Parties of Potential Assignment of Rejection | Within seven (7) days of the entry of the Bid Procedures Order |
| Bid Deadline | **[21 days after Bid Procedures Order], 5:00 p.m. prevailing Central Time** |
| Auction | **[35 days after Bid Procedures Order], 9:30 a.m. prevailing Central Time** |
| Contract/Lease and Sale Hearing Objection Deadline | **[42 days after Bid Procedures Order],  3:00 p.m. prevailing Central Time** |
| Sale Hearing | **[To be determined by the Court] _.m. prevailing Central Time** |

### Sale Hearings

23.     Concurrently with this motion, the Trustee has requested an initial hearing on the Motion (the "Initial Hearing") be set on September 20, 2018, to approve the procedures described herein including, without limitation, the Bid Procedures. Trustee also requests a final hearing on the Sale Motion (the "Sale Hearing") be set on or after November 2, 2018 to grant the remaining relief requested hereunder.

### The Sale Process

24.     Pursuant to Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary course of business may be by private sale or auction. Good cause exists to expose the Assets to auction. Trustee believes an auction conducted substantially in accordance with the Bid

WA 11145717.5

Procedures will enable Trustee to obtain the highest or best offer(s) for the Assets under the circumstances, thereby maximizing the value of Debtor's estate.

25.    Pursuant to the Bid Procedures, a Potential Bidder (other than the Stalking Horse Purchaser) must deliver the following to Trustee, prior to submitting any Bid: financial statements of, or other information relating to, the Potential Bidder or, if the Potential Bidder is an entity formed for the purpose of the Transaction, financial statements of the equity holder(s) of the Potential Bidder, or such other form of financial disclosure or evidence of financial capability and performance and legal authority acceptable to Trustee as requested by Trustee (and, if requested by Trustee, certified to by a duly authorized representative of the Potential Bidder (or equity holders thereof, as applicable)), demonstrating such Potential Bidder's financial capability and legal authority to close the proposed Transaction in a timely manner.

26.    A Potential Bidder that delivers the documents described in paragraph 25 and that Trustee determines in her business judgment is financially capable of consummating the Transaction in a timely manner will be permitted to further participate in the Bidding Process.

27.    A Potential Bidder who desires to make a Bid must deliver a written copy of its written asset-purchase agreement marked to show the specific changes to the Stalking Horse APA that the Potential Bidder requires (which marked copy may be an electronic comparison of the written asset-purchase agreement submitted and the Stalking Horse APA) on or before the Bid Deadline. Trustee may extend the Bid Deadline, but the Trustee will promptly notify all Potential Bidders of any such extension.

28.    A Bid received from a Potential Bidder (other than the Stalking Horse Purchaser) by the Bid Deadline will constitute a "Qualified Bid" only if it includes all of the following requirements, as determined by Trustee in her sole discretion:

6

a.   A written purchase agreement duly executed by the Potential Bidder substantially in the same form as the Stalking Horse APA, together with a copy of such agreement marked to show the specific changes to the Stalking Horse APA that the Potential Bidder requires (which marked copy may be an electronic comparison of the written asset purchase agreement submitted and the Stalking Horse APA). The asset-purchase agreement submitted by a Potential Bidder must fulfill the requirements stated in the Bidding Procedures.

b.   The Bid must provide for the purchase of all or substantially all of the Assets and for consideration that exceeds the cash portion of the consideration offered by the Stalking Horse Purchaser by at least $15,000 (the "Initial Minimum Overbid"). The Trustee may aggregate two or more Bids that collectively provide for the purchase for all or substantially all of the Assets and exceed the Initial Minimum Overbid into a joint Bid, which shall be deemed a Qualified Bid if it otherwise meets the bid requirements.

c.   The Bid must be in cash unless Trustee consents otherwise.

d.   The Bid must be accompanied by satisfactory evidence of committed financing or other financial ability to consummate the Transaction in a timely manner.

e.   If a Bid indicates a Potential Bidder will seek the assumption and assignment of executory contract(s) or unexpired lease(s), the Bid must include sufficient information to permit Trustee, if necessary, to timely file a motion to assume and assign such executory contract(s) or unexpired lease(s) to determine the proposed assignee's ability to comply with Code § 365 (to the extent applicable).

f.   The Bid cannot be conditioned upon the Bankruptcy Court's approval of any bid protections, such as a break-up fee, termination fee, expense reimbursement, working fee or similar type of payment.

g.   The Bid must expressly acknowledge and represent that the Potential Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Assets and business of Debtor and the Transaction prior to making its Bid, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and the Assets and business of Debtor in making its Bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the business or Assets of Debtor or the Transaction, or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the APA ultimately accepted and executed by Trustee, and (iv) has

WA 11145717.5

authority to make the Bid, execute any documents to close on the Transaction, and proceed to closing on the Transaction.

h.    The Bid must be received by the Bid Deadline.

29.    If more than one Qualified Bid is submitted for the Assets in accordance with the Bid Procedures, Trustee will conduct an auction (the "Auction"). Trustee will notify all Qualified Bidders who have submitted Qualified Bids (collectively, the "Auction Participants") of the time and date of the Auction.

30.    Prior to the Auction, Trustee will evaluate the Qualified Bids and select the Qualified Bid or combination of Qualified Bids that Trustee determines in her business judgment to be the highest or best Qualified Bid(s) (the "Initial Highest Bid") for the assets of Debtor's estate. In making this determination, Trustee may consider, among other things, the amount of cash to be paid or delivered, the conditions to closing, the Assets being purchased, the amount of liabilities being assumed and related matters.

31.    Trustee will give each of the Auction Participants notice of the Initial Highest Bid and a copy of such Bid prior to the scheduled start of the Auction.

32.    At the commencement of the Auction, Trustee will formally announce the Initial Highest Bid(s) and the assets to which they relate. All Qualified Bids at the Auction will be based on the Initial Highest Bid(s) and increased therefrom, and thereafter made in minimum increments higher than the previous Qualified Bid in an amount of at least $10,000.[2]

33.    Trustee will have the right to adopt such other rules for the Auction which she believes in her business judgment will promote the goals of the Auction to obtain the highest and best price for the Assets.

---

[2]  Minimum bid increments must consist solely of cash consideration unless otherwise authorized by Trustee.

WA 11145717.5

34.     Trustee may (a) determine which Qualified Bid, if any, is the highest or otherwise best offer(s); and (b) reject at any time before entry of an Order of the Bankruptcy Court approving the Successful Bid(s), any bid that, in the discretion of Trustee, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bid Procedures, or (iii) contrary to the best interests of Debtor's estate and its creditors.

35.     The Bid Procedures provide an appropriate framework for obtaining offers for the purchase of the Assets and will enable Trustee to review, analyze and compare all Bids received to determine which Bid (or Bids) is in the best interests of Debtor's estate and its creditors. Therefore, Trustee respectfully requests this Court approve the Bid Procedures and authorize Trustee to take any and all actions necessary or appropriate to implement the Bid Procedures.

### Credit Bid

36.     Code § 363(k) states:

> At a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of the property.

37.     Cause exists to prohibit credit bidding in this case. The Debtors' schedules only list judgment lienholders as creditors who may have a claim secured by property. The Trustee disputes these liens, as explained in the Trustee's Motion for Partial Summary Judgment [Doc. 59] in Adv. Pro. No. 17-2010. As there is a dispute about whether these judgment lienholders have liens on the property, credit bidding should not be permitted. "[C]ourts have found 'cause' to deny the opportunity to credit bid when a sufficient dispute exists regarding the validity of the lien forming the basis for the credit bid." *In re L.L. Murphrey Co.*, No. 12-03837-8, 2013 WL 2451368, at *5 (Bankr. E.D.N.C. June 6, 2013); *see also In re Fisker Automotive Holdings, Inc.*, 510 B.R. 55, 61 (Bankr. D. Del. 2014) (limiting credit bidding when "the validity of [creditor's]

9                                              WA 11145717.5

secured status has not been determined"); *In re Daufuskie Island Properties, LLC*, 441 B.R. 60, 63 (Bankr. D.S.C. 2010) (finding that cause existed to deny credit bidding when claim was disputed); *In re McMullan*, 196 B.R. 818, 835 (Bankr. W.D. Ark. 1996) (holding that if there was a sale, the creditor could not credit bid "because the validity of its liens and security interests are unresolved"), *aff'd*, 162 F.3d 1164 (8th Cir. 1998).

### Procedure to Address Assumption and Assignment, or Rejection, of Unexpired Leases and Executory Contracts

38.     Trustee currently anticipates that the Prevailing Bid at the Sale Hearing may include provisions requesting that the Trustee assume and assign, or reject, certain unexpired leases or executory contracts. However, the Trustee does not yet know exactly which unexpired leases or executory contracts may be assumed and assigned, or rejected. Accordingly, Trustee is proposing to send a separate notice to all non-debtor parties to unexpired leases and executory contracts of the potential assumption and assignment, or rejection, of unexpired leases and executory contracts, including schedules detailing Trustee's calculation of the amount, if any, necessary to cure any default or compensate for any actual pecuniary loss in accordance with Code § 365(b)(1)(A) and (B).

39.     Additionally, as soon as the Trustee determines the highest and best bid, the Trustee will file a Supplemental Notice with the Bankruptcy Court and deliver it to all non-debtor parties to unexpired leases and executory contracts. The Supplemental Notice will, among other things, identify the unexpired leases and executory contracts that the Successful Bidder(s) are proposing to have Trustee assume and assign, or reject, if any.

### Objections and Related Procedures

40.     Trustee requests the following procedures be implemented with respect to the notices discussed herein and relief related thereto:

WA 11145717.5

a.  Objections, if any, to all or any part of the Motion shall be filed on the docket of the Bankruptcy Court and served such that each objection is actually received by the following parties on or before the relevant objection deadline specified above: (a) counsel for Trustee, Andrea M. Chase, Spencer Fane LLP, 1000 Walnut, Suite 1400, Kansas City, MO 64106, achase@spencerfane.com; and (b) Office of the United States Trustee's Office, Adam E. Miller, Trial Attorney, 400 East 9th Street, Room 3440, Kansas City, Missouri, adam.e.miller@usdoj.gov.

b.  Any person failing to timely file an objection to the Motion shall be barred from objecting to the Motion, including the sale of the Assets free and clear of any and all liens, claims, encumbrances, and other interests, and will be deemed to consent to the Transaction(s), including the sale of the Assets free and clear of any and all liens, claims, encumbrances, and other interests.

41.    The above procedures are fair, reasonable and appropriate to provide a framework for the Court to consider the Motion and the relief requested thereunder. Trustee respectfully requests the Court approve the foregoing notice and objection procedures.

## LEGAL ARGUMENT SUPPORTING RELIEF REQUESTED

### Sale Under Code § 363 Generally

42.    Code § 363(b)(1) provides: "The Trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Code § 105(a) provides in relevant part: "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

43.    A sale of assets of a debtor should be authorized pursuant to Code § 363 if a sound business purpose exists for doing so. *See, e.g.*, *Fulton State Bank v. Schipper (In re Schipper),* 933 F. 2d 513, 515 (7th Cir. 1991); *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1070 (2d Cir. 1993). The Trustee has determined a sale of the Assets to the Successful Bidder(s) is the best way to maximize the value of the Assets in this case. Maximization of asset value is a sound business purpose, warranting authorization of the sale.

WA 11145717.5

**Sale Free of Liens, Interests, Claims and Encumbrances Under Code § 363(f)**

44.     Code § 363(f) provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
>
> (1)     applicable non-bankruptcy law permits sale of such property free and clear of such interest;
>
> (2)     such entity consents;
>
> (3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)     such interest is in bona fide dispute; or
>
> (5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

45.     Code § 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the Trustee's sale of the Assets free and clear of all liens, claims and encumbrances. Each lien, claim or encumbrance attached to the Assets satisfies at least one of the five conditions of Code § 363(f), and Trustee submits that any such lien, claim or encumbrance will be adequately protected by attachment to the net proceeds of the proposed sale(s), subject to any claims and defenses Trustee or any other party in interest may possess with respect thereto. For the avoidance of doubt, this includes, without limitation, the Trustee's Motion for Partial Summary Judgment [Doc. 59] in Adv. Pro. No. 17-2010. Accordingly, the Trustee requests that the Assets be transferred to the Successful Bidder(s) free and clear of all liens, claims, interests and encumbrances, with such liens, claims, interests and encumbrances to attach to the proceeds of the sale of the Assets.

46.     The Trustee is not seeking to sell the Customer Deposits free and clear of any interest that the Debtor's customers may have in the Customer Deposits. The Stalking Horse

WA 11145717.5

APA contemplates that the Trustee will transfer the Customer Deposits to the Stalking Horse
Purchaser, and the Customer Deposits shall remain subject to the customers' claims for refund of
the Customer Deposits.

### Good Faith Purchaser Code § 363(m)

47.    Code § 363 (m) provides:

> The reversal or modification on appeal of an authorization under
> subsection (b) or (c) of this section of a sale or lease of property does not
> affect the validity of a sale or lease under such authorization to an entity
> that purchased or leased such property in good faith, whether or not such
> entity knew of the pendency of the appeal, unless such authorization and
> such sale or lease were stayed pending appeal.

While the Bankruptcy Code does not define "good faith," the Seventh Circuit in *In the Matter of*

*Andy Frain Services, Inc.,* 798 F.2d 1113 (7th Cir. 1986) held that:

> The requirement that a purchaser act in good faith . . . speaks to the integrity of his
> conduct in the course of the sale proceedings.   Typically, the misconduct that
> would destroy a purchaser's good faith status at a judicial sale involves fraud,
> collusion between the purchaser and other bidders or the trustee, or an attempt to
> take grossly unfair advantage of other bidders.

798 F.2d at 1125 (emphasis omitted) (quoting *In re Rock Industries Machinery Corp.,* 572 F.2d

1195, 1198 (7th Cir. 1978) (interpreting Bankruptcy Rule 805, the precursor of Code § 363(m))).

The Trustee submits that any agreement reached with the Successful Bidder pursuant to the

Bidding Procedures is an arm's length negotiated transaction entitled to the protections of Code §

363(m) and will adduce evidence of the same at the Sale Hearing.   *See In re Trism*, 328 F.3d

1003, 1006 (8th Cir. 2003).

### Bid Protection Under Code § 363

48.    The Stalking Horse APA provides that the Trustee may solicit bids from other

prospective buyers and conduct an auction. However, in light of the Stalking Horse Purchaser's

commitments and undertakings with respect to this transaction, the Stalking Horse APA provides

WA 11145717.5

that the Stalking Horse Purchaser will have the right to seek expense reimbursement as an administrative expense claim of up to 3% of the purchase price. The Stalking Horse APA further provides that the Stalking Horse Purchaser will have matching rights with respect to other bids, with the other bidder having the right to increase its offer over the matched offer, and with the Stalking Horse Purchaser having the ability to keep matching the highest offer.

49.     In the context of bankruptcy cases, it is appropriate to grant bidding incentives to prospective purchasers. Bidding incentives are considered proper compensation for the risk involved in preparing and proposing a bid that will establish a minimum standard for competing bids. *See In re Integrated Resources, Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (Bid fees are "important tools to encourage bidding and to maximize the value of the debtor's assets").

50.     Here, the bidding incentives are entirely fair and reasonable. The ability to seek an expense reimbursement of 3% of a transaction is modest. Further, the matching rights do not unduly chill any potential bidding process in that a potential purchaser can continue to keep bidding on the Assets even if matched by the Stalking Horse Purchaser, subject to the Stalking Horse Purchaser being declared the high bidder if it matches the highest bid.

51.     The bid protections described herein meet the "business judgment rule" standard. The bid protection described herein promote more competitive bidding by inducing the Stalking Horse Purchaser to hold its offer open as a minimum or floor bid on which other bidders—and the Trustee—can rely. The Stalking Horse bid increases the likelihood that the price at which the Assets are sold will reflect their true worth, and the Stalking Horse Purchaser is entitled to be able to seek compensation as a result.

WA 11145717.5

## Assumption and Assignment, or Rejection, of Unexpired Leases and Executory Contracts

52.     Code § 365(a) provides that a trustee "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Upon finding that a trustee has exercised its sound business judgment in determining to assume an executory contract or unexpired lease, courts should approve the  assumption under section 365(a) of the Bankruptcy Code unless there is "a finding of bad faith or gross abuse of [the trustee's] 'business discretion'". *See In re Crystalin, L.L.C.*, 293 B.R. 455, 463-64 (8th Cir. B.A.P. 2003)(citations omitted).

53.     Pursuant to Code § 365(f)(2), a trustee may assign an executory contract or unexpired lease of nonresidential real property if "adequate assurance of future performance by the assignee of such contract or lease is provided." 11 U.S.C. § 365(f)(2). "As used in [Code] § 365(f)(2)(B), 'adequate' is a term of art and simply means assurances that are commercially reasonable under the particular circumstances of the case. This is a commonsense, case-specific inquiry, and [Code] § 365(f)(2)(B) is given a practical, pragmatic construction…." *In re Resource Technology Corp.*, 624 F.3d 376, 383 (7th Cir. 2010)(internal quotation and citation omitted).

54.     At the Sale Hearing, to the extent necessary, the Trustee will be prepared to proffer testimony or present evidence to demonstrate the ability of each Prevailing Bidder to perform under any of the contracts that the Trustee seeks to assume and assign. The Sale Hearing, therefore, will provide the Court and other interested parties with the opportunity to evaluate the ability of a Prevailing Bidder to provide adequate assurance of future performance, as required by Code § 365(b)(1)(C). Accordingly, it is requested that at the conclusion of the

WA 11145717.5

Sale Hearing, the proposed assumption and assignment of any identified executory contracts or leases be approved.

55.    To facilitate the assumption and assignment of any executory contracts or unexpired leases, the Trustee further requests the Court find all anti-assignment provisions of such executory contracts or unexpired leases to be unenforceable under Code § 365(f).[3]

WHEREFORE, Trustee respectfully requests the Court enter an Order granting the requested relief and granting such other and further relief as is necessary and appropriate.

Date: August 26, 2018

Respectfully submitted,

**SPENCER FANE LLP**

By: /s/ Eric L. Johnson
Eric L. Johnson          MO Bar No. 53131
Andrea M. Chase          MO Bar No. 66019
Zach R.G. Fairlie        MO Bar No. 68057
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
Office:  816-474-8100
Facsimile:  816-474-3216
ejohnson@spencerfane.com
achase@spencerfane.com
zfairlie@spencerfane.com

COUNSEL FOR TRUSTEE

---

[3] Code § 365(f)(1) provides in part that, "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease…" 11 U.S.C. § 365(f)(1). Code § 365(f)(3) further provides that "Notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee." 11 U.S.C. § 365(f)(3).

WA 11145717.5

## <u>EXHIBIT 1</u>

**Proposed Bid Procedures and Bid Protection Order for Initial Hearing**

IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

IN THE MATTER OF:        )
                             )   Case No.  17-42759-drd11
OSAGE WATER COMPANY,   )
                             )
               Debtor.      )

**ORDER APPROVING PROCEDURES FOR THE SOLICITATION OF OFFERS FOR
(A) THE SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS FREE AND
CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (B) THE
POSSIBLE ASSUMPTION AND ASSIGNMENT, OR REJECTION, OF CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES;
AND (C) RELATED RELIEF**

At a hearing on [ ], 2018 (the "Bid Procedures Hearing"), this Court considered Trustee's

Motion to Approve (a)  the Sale of Substantially All of Debtor's Assets Free and Clear of All

Liens, Interests, Claims and Encumbrances, and Related Procedures and Bid Protection Pursuant

to 11 U.S.C. § 363, (b) the Potential Assumption and Assignment, or Rejection, of Certain

Executory Contracts and Unexpired Leases, and Related Procedures, Pursuant to 11 U.S.C.

§ 365, and (c) Related Relief Pursuant to 11 U.S.C. §§ 102 and 105 [Docket No. _____] (the

"Motion").[1] Based on the arguments and evidence at the Bid Procedures Hearing, the Court

hereby finds and determines that:

1.       The Court has jurisdiction to consider the Motion and the relief requested therein

pursuant to 28 U.S.C. §§ 157 and 1334, the consideration of the Motion and the relief requested

therein is a core proceeding pursuant to 28 U.S.C. § 157(b), and venue is proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.       As reflected in the Certificate of Service [Docket ___] filed with respect to the

Bid Procedures Hearing, notice of the Motion and of the Bid Procedures Hearing were served on

---

[1]  Capitalized terms that are not defined herein shall have the meanings given to them in the Bid Procedures.

interested parties (the "Notice").  The Notice is reasonable and sufficient in light of the circumstances and nature of the relief requested in the Motion, and no other or further notice of the Motion for the Bid Procedures Hearing is necessary.  A reasonable and fair opportunity to object to the Motion and the relief granted in this Order has been afforded under the circumstances.

3.      Trustee has articulated good and sufficient reasons for this Court to grant the relief requested in the Motion.  Such good and sufficient reasons were set forth in the Motion and on the record at the Bid Procedures Hearing and are incorporated by reference herein and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

4.      The bid procedures in the form attached as **Exhibit A** (the "Bid Procedures"), are fair, reasonable, and appropriate, and are designed to maximize the value of the Debtor's estate.

5.      The Stalking Horse APA in **Exhibit B**, or as modified in the discretion of Trustee, is also fair, reasonable, and appropriate, and is designed to maximize the value of Debtor's estate.

6.      The service of the notice of the Bid Procedures, the Sale Hearing (as defined below), the Objection Deadline (as defined below), the respective dates, times and places for an Auction (as defined below), if required under the Bid Procedures, substantially in the form attached as **Exhibit C** (the "Transaction Notice"), is adequate and reasonably calculated to provide due, proper, and timely notice to all interested parties of, among other things, the entry of this Order, the Bid Procedures, the Auction (if required under the Bid Procedures), the Sale Hearing, the Sale Motion (as defined below), the proposed Transaction(s), including the sale of Debtor's estate's right, title, and interest in, to, and under the Assets free and clear of any and all liens, claims, encumbrances, and interests, and the procedure for objecting thereto, the possible

assumption and assignment of desired unexpired leases and executory contracts and rights thereunder, and the procedures for objecting thereto. Except as otherwise set forth herein, no other or further notice is necessary.

7. The procedures for objecting to the Transaction(s) and the proposed assumption and assignment of desired unexpired leases and executory contracts are fair, reasonable, and appropriate.

8. The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such. To the extent any conclusions of law are findings of fact, they are adopted as such.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

a. The Motion is **GRANTED** as set forth herein.

b. All objections to the relief requested in the Motion, if any, that have not been withdrawn, waived, or settled as announced to the Court at the Bid Procedures Hearing are denied and overruled in their entirety on the merits.

c. The Stalking Horse APA is fair, reasonable, and appropriate, and is designed to maximize the value of Debtor's estate.

d. Trustee's selection of the Stalking Horse Purchaser is fair, reasonable, and appropriate, and is designed to maximize the value of Debtor's estate.

e. The Bid Procedures are fair, reasonable, and appropriate, and are designed to maximize the value of Debtor's estate.

f. The Stalking Horse Purchaser is authorized to seek expense reimbursement up to 3% of the purchase price, in accordance with the terms of the Stalking Horse APA.

g. No person other than the Stalking Horse Purchaser shall be entitled to any expense reimbursement, break-up fee, "topping," termination, or other similar fee or payment, and by submitting a Bid, such person or entity is

WA 11145717.5

deemed to have waived its right to request or file with this Court any request for expense reimbursement or any fee of any nature, whether by virtue of Code § 503(b) or otherwise.

h.     Trustee may proceed with the Transaction(s) in accordance with the Bid Procedures, which procedures are hereby approved in their entirety in the form attached hereto as Exhibit A.  However, the consummation of the sale of the Assets (as provided in the APA) shall remain subject to the entry of an Order granting the Motion.

i.     Potential Bidders must comply with all terms of the Bid Procedures in order to participate in the bidding process.  All Bids must satisfy all of the requirements contained in the Bid Procedures.

j.     The Stalking Horse Purchaser is deemed a Qualified Bidder, and the Stalking Horse APA is deemed a Qualified Bid.

k.     Trustee is authorized and directed to take any and all actions necessary or appropriate to implement the Bid Procedures.  The process for submitting Qualified Bids is fair, reasonable and appropriate and is designed to maximize recoveries for the benefit of Debtor's estate, its creditors and other parties in interest.  Any disputes as to the selection of a Qualified Bid, Initial Highest Bid, and/or Successful Bid shall be resolved by this Court.

l.     The Stalking Horse APA, in the form attached as Exhibit B, is approved in its entirety.  Notwithstanding the foregoing, Trustee shall have the right to modify the Stalking Horse APA as appropriate in her sole discretion without further Order of this Court in order to consummate the Transaction(s).

m.     As further described below, the key dates for this Order and the Bid Procedures are as follows, with each of such dates being subject to extension by Trustee:

| **Event** | **Date and Time (if applicable)** |
|---|---|
| Transaction Notice | Within seven (7) days of the entry of this Order |
| Notice to Contract/Lease Parties of Potential Assignment of Rejection | Within seven (7) days of the entry of this Order |
| Bid Deadline | **[21 days after Order], 5:00 p.m. prevailing Central Time** |
| Auction | **[35 days after Order], 9:30 a.m. prevailing Central time** |

WA 11145717.5

| Contract/Lease and Sale Hearing Objection Deadline | **[42 days after Order],  3:00 p.m. prevailing Central Time** |
|---|---|
| Sale Hearing | **[To be determined by Court] a.m. prevailing Central Time** |

n.  Any person desiring to submit a Bid for the Assets must comply with the Bid Procedures and shall not be permitted to participate at the Auction unless such person is an Auction Participant or is otherwise permitted to participate at the Auction under the Bid Procedures.

o.  If the Trustee does not receive any Qualified Bids (other than the Stalking Horse APA); (i) Trustee will not hold the Auction, and (ii) the Stalking Horse Purchaser will be deemed the Successful Bidder for the Assets.

p.  If a Qualified Bid (other than the Stalking Horse APA) has been submitted for the Assets in accordance with the Bid Procedures, Trustee will conduct an auction as to such Assets (the "Auction") on **[_____], 2018, prevailing Central time**, at the offices of Spencer Fane LLP, 1000 Walnut, Suite 1400, Kansas City, Missouri 64106 or at such later time or other place as designated by Trustee, or approved by Order of the Court, and of which Trustee will notify all Qualified Bidders who have submitted Qualified Bids.

q.  A final hearing (the "Sale Hearing") to consider the Motion shall be held **[_____], 2018**, in Courtroom 4B before the Honorable Dennis R. Dow, United States Bankruptcy Judge, at the United States Bankruptcy Court, Western District of Missouri, 80 Lafayette Street, Jefferson City, MO.

r.  Objections, if any, to the Motion shall be filed on the docket of the Court and served such that each objection is actually received by the following parties on or before 3:00 p.m., prevailing Central time on **[_____], 2018** (the "Objection Deadline"): (a) counsel for Trustee, Andrea M. Chase, Spencer Fane LLP, 1000 Walnut, Suite 1400, Kansas City, MO 64106, achase@spencerfane.com; and (b) Office of the United States Trustee's Office, Adam E. Miller, Trial Attorney, 400 East 9th Street, Room 3440, Kansas City, Missouri, adam.e.miller@usdoj.gov.

s.  Any person failing to timely file an objection to the Motion shall be barred from objecting to the Motion, including the sale of the Assets in accordance with the Stalking Horse APA, free and clear of any and all liens, claims, encumbrances, and interests and will be deemed to consent to the Transaction(s), including the sale of the  Assets in accordance with the Stalking Horse APA free and clear of any and all liens, claims, encumbrances, and other interests; provided however, that the Transaction shall not be free and clear of any liens, claims, encumbrances, or interests that customers have in the Customer Deposits.

WA 11145717.5

t.      Any person failing to timely file an objection to any cure amounts set forth in notice of the proposed assumption and assignment of the Trustee's right, title and interest in, to and under desired unexpired leases and executory contracts shall be barred from objecting to the cure amounts and from asserting a claim for any cure or other amounts (or asserting that any defaults exist under the desired unexpired leases and executory contracts as of the date of assumption) against the Trustee, the estate, or the Successful Bidder(s) with respect to the desired unexpired leases and executory contracts arising prior to assumption and assignment of the Trustee's right, title and interest in, to and under the desired unexpired leases and executory contracts and will be deemed to consent to the proposed assumption and assignment of the desired unexpired leases and executory contracts and rights thereunder as provided by such Transaction(s).

u.      Where any party files a timely objection to the maximum cure amount set forth in the notice and the parties are unable to consensually resolve the dispute prior to the Sale Hearing, the amount to be paid with respect to such objection will be determined at the Sale Hearing or such other date and time as may be fixed by this Court.  All other objections to the proposed assumption and assignment of the Trustee's right, title and interest in, to and under the desired unexpired leases and executory contracts will be heard at the Sale Hearing.

v.      For cause shown, notwithstanding Bankruptcy Rules 6004, 6006, or otherwise, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  To the extent applicable, the stays described in Bankruptcy Rules 6004(h) and 6006(d) are hereby waived.

w.      The terms of this Order shall control to the extent of any conflict with the Motion or the Bid Procedures.

x.      This Order shall become effective immediately upon its entry.

y.      The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

Date: _____ _____, 2018

_____
HONORABLE DENNIS R. DOW
United States Bankruptcy Judge

WA 11145717.5

**Exhibit A**

IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | Case No.  17-42759-drd11 |
| OSAGE WATER COMPANY, | ) | |
| | ) | |
| Debtor. | ) | |

## BID PROCEDURES

On August 25, 2018, Trustee filed her Motion to Approve (a) Sale of Substantially All of Debtor's Assets Free and Clear of All Liens, Interests, Claims and Encumbrances, and Related Procedures and Bid Protection Pursuant to 11 U.S.C. § 363, (b) the Potential Assumption and Assignment, or Rejection, of Certain Executory Contracts and Unexpired Leases, and Related Procedures Pursuant to 11 U.S.C. § 365, and (c) Related Relief Pursuant to 11 U.S.C. §§ 102 and 105 [Docket No. _____] (the "Motion"), pursuant to which Trustee requested authority to sell substantially all of the assets of Debtor's estate to the highest and best bidders subject to the process outlined herein (the "Transaction"). On August __, 2018, Trustee entered into an asset purchase agreement (the "Stalking Horse APA") with Central States Water Resources, Inc. (the "Stalking Horse Purchaser") pursuant to which the Stalking Horse Purchaser proposes to acquire from Trustee the Assets (as defined in the Stalking Horse APA). These Bid Procedures have been approved and authorized pursuant to the Order Approving Procedures for the Solicitation of Offers for (a) the Sale of Substantially All of Debtor's Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (b) the Possible Assumption and Assignment, or Rejection, of Certain Executory Contracts and Unexpired Leases, and (c) Related Relief [Docket No. [____]] (the "Bid Procedures Order") entered by the United States Bankruptcy Court for the Western District of Missouri (the "Bankruptcy Court") on [____], 2018.

## The Bidding Process

Subject to the conditions set forth herein, at any time on or before [_____], 2018, at 5:00 p.m. (prevailing Central Time) (the "Bid Deadline"), Trustee will (i) engage in discussions and negotiations regarding a sale transaction with any entity (a "Potential Bidder") that has made inquiry with Debtor, Trustee, or counsel thereof, within the past 12 months regarding potential asset sales and/or that Trustee reasonably believes could lead to a bona fide written offer relating to a Transaction that would meet the requirements of these Bid Procedures (the "Proposal"), (ii) furnish to such Potential Bidder and its Representatives,[1] and to any other party that has made a

---

[1] "**Representatives**" means, with respect to any person, the officers, directors, employees, members, managers, partners, investment bankers, attorneys, accountants, consultants or other advisors, agents or representatives of such person, when acting in such capacity on behalf of such person.

request therefor in connection with its consideration of making an offer or proposal relating to a Transaction (each a "<u>Bid</u>"), public and non-public information relating to Debtor and its assets and businesses and (iii) afford to any such Potential Bidder reasonable access to any data site, properties, assets, books or records of Debtor.

Trustee shall provide these Bid Procedures,[2] together with a copy of the Stalking Horse APA to each Potential Bidder.

Any Potential Bidder wishing to conduct due diligence concerning a prospective Transaction shall be granted access to all relevant business, financial and other information of Debtor as may be reasonably necessary (to be determined at Trustee's discretion) to enable such Potential Bidder to evaluate the assets and business of Debtor and the prospective Transaction. Debtor shall make such access available during normal business hours as soon as reasonably practicable. Potential Bidders interested in conducting due diligence should contact counsel for Trustee, Andrea M. Chase, Spencer Fane LLP, 1000 Walnut, Suite 1400, Kansas City, MO 64106, achase@spencerfane.com. Notwithstanding the foregoing, Trustee is not required to provide confidential or proprietary information to any person if Trustee determines such disclosure could be detrimental to the interests of Debtor's estate.

Prior to the selection of a Bid as the highest or best offer for any individual asset, portion of the Assets, or all of the Assets (the "<u>Successful Bid(s)</u>"), Trustee may: (a) receive Bids from Potential Bidders, (b) request information from Potential Bidders and engage in discussions with Potential Bidders and take such other actions to determine whether any Bid constitutes or could lead to a superior Proposal, (c) evaluate any Bid made by a Potential Bidder, (d) engage in discussions and negotiations with any Potential Bidder with respect to any Bid submitted by a Potential Bidder, and (e) take any other actions contemplated under these Bid Procedures (collectively, the "<u>Bidding Process</u>").

## **Deliveries by Potential Bidders**

In order to participate in the Bidding Process, each Potential Bidder (other than the Stalking Horse Purchaser) must deliver the following to Trustee prior to the Bid Deadline (unless previously delivered in a form acceptable to Trustee as provided herein or waived by Trustee):

   a.   Financial statements of, or other information relating to, the Potential Bidder or, if the Potential Bidder is an entity formed for the purpose of the Transaction, financial statements of or other information relating to the equity holder(s) of the Potential Bidder, or such other form of financial disclosure or evidence of financial capability and performance and legal authority acceptable to Trustee (and, if requested by Trustee, certified to by a duly authorized representative of the Potential Bidder (or equity holders thereof, as applicable)), demonstrating such Potential Bidder's financial capability and legal authority to close the proposed Transaction in a timely manner.

---

[2] Unless otherwise defined herein, capitalized terms shall have the same meaning as set forth in the Motion.

A Potential Bidder that delivers the documents described in subparagraph (a) above and that Trustee determines in her business judgment is financially capable of consummating the Transaction in a timely manner shall be permitted to further participate in the Bidding Process. Trustee may require an update of such information and an affirmation of any Potential Bidder's financial capability to bid and consummate any Transaction contemplated hereunder.

### Due Diligence for Potential Bidders

To obtain due diligence access or additional information, a Potential Bidder must first advise Trustee of the nature and extent of additional due diligence such Potential Bidder may wish to conduct. Trustee shall coordinate all requests for additional information and due diligence access by such Potential Bidders with Debtor. No conditions relating to the completion of due diligence will be permitted to exist after the Bid Deadline, except as otherwise agreed to by Trustee in writing.

### Submission by Bid Deadline

A Potential Bidder who desires to make a Bid must deliver a written copy of its written asset purchase agreement marked to show the specific changes to the Stalking Horse APA that the Potential Bidder requires (which marked copy may be an electronic comparison of the written asset purchase agreement submitted and the Stalking Horse APA) on or before **[_____], 2018, 5:00 p.m., prevailing Central time,** to counsel for Trustee, Andrea M. Chase, Spencer Fane LLP, 1000 Walnut, Suite 1400, Kansas City, MO 64106, achase@spencerfane.com. Trustee may extend the Bid Deadline, but Trustee shall promptly notify all Potential Bidders of any such extension.

### Determination of "Qualified Bid" Status

A Bid received from a Potential Bidder by the Bid Deadline (other than the Stalking Horse Purchaser) will constitute a "Qualified Bid" only if it includes all of the following documents (the compliance of which shall be determined by Trustee) (collectively, the "Required Bid Documents") and a Good Faith Deposit as described below and meets all of the Bid Requirements (as defined below):

    a.    A written asset purchase agreement duly executed by the Potential Bidder in substantially the same form as the Stalking Horse APA with changes only regarding the applicable Assets and contracts being purchased and changes acceptable to Trustee, together with a copy of such agreement marked to show the specific changes to the Stalking Horse APA that the Potential Bidder requires (which marked copy may be an electronic comparison of the written asset purchase agreement submitted and the Stalking Horse APA). The asset purchase agreement submitted by a Potential Bidder shall:

        i.    specifically delineate which individual Asset, portion of the Assets, or all of the Assets the Potential Bidder proposes to purchase;

WA 11145717.5

ii.     if not purchasing all of the Assets, allocate the value the Potential Bidder places on the Assets that is proposed to be purchased;

iii.    include a complete set of all schedules and exhibits thereto which, to the extent practicable, will be marked to show the specific changes to the schedules and exhibits to the Stalking Horse APA, if applicable;

iv.    identify each and every executory contract and unexpired lease that is to be assumed and assigned to the Potential Bidder, if any;

v.     not contain any financing or due diligence contingencies to closing on the proposed Transaction;

vi.    not contain any condition to closing of the Transaction on the receipt of any third party approvals (excluding required Bankruptcy Court approval and any required governmental and/or regulatory approvals, including without limitation, approval from the Missouri Public Service Commission); and

vii.   provide that the offer of the Potential Bidder is irrevocable through 180 days after the entry of an Order approving the Sale Motion and subject to the backup bidder provisions herein.

b.    A good faith deposit (the "Good Faith Deposit") in the form of a wire transfer to Trustee or a certified or bank check payable to the order of Trustee (or other form acceptable to Trustee) in the amount of at least 10% of the proposed purchase price.

Each Potential Bidder that makes a Qualified Bid shall be referred to as a "Qualified Bidder." Notwithstanding anything to the contrary herein, the Stalking Horse Purchaser shall be deemed a Qualified Bidder, and the Stalking Horse APA shall be deemed a Qualified Bid.

### Bid Requirements

All Bids must also satisfy all of the following requirements, all solely as determined by Trustee:

a.    The Bid must provide for consideration under the APA for each of the Assets proposed to be purchased.

b.    The Bid must provide for the purchase of all or substantially all of the Assets and for consideration that exceeds the cash portion of the consideration offered by the Stalking Horse Purchaser by at least $15,000 (the "Initial Minimum Overbid"). The Trustee may aggregate two or more Bids that collectively provide for the purchase for all or substantially all of the Assets and exceed the Initial Minimum Overbid into a joint Bid, which shall be deemed a Qualified Bid if it otherwise meets the bid requirements.

WA 11145717.5

c.      The Bid must be in cash unless Trustee consents otherwise.

d.      The Bid must be accompanied by satisfactory evidence of committed financing or other financial ability to consummate the Transaction in a timely manner.

e.      If a Bid indicates that a Potential Bidder will seek the assumption and assignment of executory contract(s) or unexpired lease(s), the Bid must include sufficient information to permit Trustee, if necessary, to timely file a motion to assume and assign such executory contract(s) or unexpired lease(s) to determine the proposed assignee's ability to comply with Code § 365 (to the extent applicable).

f.      The Bid (other than the Stalking Horse APA) cannot be conditioned upon the Bankruptcy Court's approval of any bid protections, such as a break-up fee, termination fee, expense reimbursement, working fee or similar type of payment.

g.      The Bid must expressly acknowledge and represent that the Potential Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the assets and businesses of Debtor and the Transaction prior to making its Bid, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and the assets and businesses of Debtor in making its Bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the business or assets of Debtor or the Transaction, or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the APA ultimately accepted and executed by Trustee, and (iv) has authority to make the Bid, execute any documents to close on the Transaction and proceed to closing on the Transaction.

h.      The Bid must be received by the Bid Deadline.

<u>**Auction**</u>

If a Qualified Bidder (other than the Stalking Horse Purchaser) has been submitted for any or all of the Assets, the Trustee shall conduct an auction (the "<u>Auction</u>") with respect to such Qualified Bids in order to determine, in the business judgment of Trustee, the Successful Bid(s). If no Qualified Bid (other than the Stalking Horse APA) has been submitted by the Bid Deadline or aggregated by the Trustee, the Stalking Horse APA shall be deemed the Successful Bid and no Auction shall be conducted.

Prior to the Auction, Trustee shall attempt to aggregate Bids for less than substantially all of the Assets into a Qualified Bid, evaluate the Qualified Bids and select the Qualified Bid or combination of Qualified Bids Trustee determines in her business judgment to be the highest or best Qualified Bid(s) (the "<u>Initial Highest Bid</u>") for a sale of the Assets. In making this

WA 11145717.5

determination, Trustee may consider, among other things, the amount of cash to be paid or delivered, and the other terms and conditions of the Qualified Bid(s). For the avoidance of doubt, Trustee shall not be required to aggregate Bids for less than substantially all of the Assets if there are no circumstances under which such aggregation would constitute a Qualified Bid.

The Auction, if required, will commence at 9:30 a.m. (prevailing Central Time) on **[_____], 2018** at the offices of Spencer Fane LLP, 1000 Walnut, Suite 1400, Kansas City, Missouri 64106 or at such later time or other place as designated by Trustee, or approved by Order of the Bankruptcy Court, and of which Trustee will notify all Qualified Bidders who have submitted Qualified Bids (collectively, the "Auction Participants").

Trustee shall give each of the Auction Participants notice of the Initial Highest Bid and a copy of such Bid prior to the scheduled start of the Auction.

Only Debtor, Trustee, the Auction Participants, potential financing sources of the Auction Participants, and their respective Representatives will be entitled to attend, participate and be heard at the Auction. For the avoidance of doubt, Bidders that submit Bids for only a portion of the Assets that are not aggregated into a joint bid that is a Qualified Bid after the Bid Deadline but prior to the Auction, shall not be permitted to attend, participate, or be heard at the Auction. In order to participate and be heard at the Auction, a party must actually attend the Auction; telephonic appearances will not be allowed.

At the commencement of the Auction, Trustee shall formally announce the Initial Highest Bid(s) and the assets to which they relate. All Qualified Bids at the Auction will be based on and increased therefrom, and thereafter made in minimum increments higher than the previous Qualified Bid by at least $10,000.[3]

Trustee shall have the right to adopt such other rules for the Auction which Trustee believes in her business judgment will promote the goals of the Auction, including, without limitation, that Trustee can continue to take and negotiate bids in lot or in bulk until the Successful Bid(s) have been selected.

Each Auction Participant shall be deemed to have agreed to keep its final Qualified Bid made at or prior to the Auction open through 180 days after the entry of an Order approving the Motion. Bidding at the Auction will continue until such time as the highest or otherwise best Qualified Bid(s) are determined in the business judgment of Trustee. To facilitate a deliberate and orderly consideration of competing Qualified Bids submitted at the Auction, Trustee may adjourn the Auction at any time and from time-to-time and may conduct multiple rounds of bidding. Upon conclusion of the Auction, Trustee will (a) review each Qualified Bid on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale, and (b) identify the Successful Bid(s). In making this determination, Trustee may consider, among other things, the amount of cash to be paid or delivered and the other terms or conditions of the Qualified Bid(s), and the determination by Trustee shall be final for the purposes of these Bid Procedures.

---

[3] Minimum bid increments must consist solely of cash consideration unless otherwise authorized by Trustee.

6

## Credit Bid Right

The sale of Water Systems is not subject to the right to credit bid pursuant to Code §363(k).

## Sale Hearing

An evidentiary hearing to consider the Sale Motion and approval of the Successful Bid(s) (the "Sale Hearing"), will be held on [_____], 2018 at [____], **prevailing Central time**, in the Courtroom 4B before the Honorable Dennis R. Dow, United States Bankruptcy Judge, at the United States Bankruptcy Court, Western District of Missouri, 80 Lafayette Street, Jefferson City, MO. The Sale Hearing may be adjourned or rescheduled as ordered by the Bankruptcy Court without further notice to creditors and parties in interest other than by announcement by Trustee of the adjourned date at the Sale Hearing.

Trustee's presentation to the Bankruptcy Court for approval of the Successful Bid(s) does not constitute Trustee's acceptance of the Bid(s). Trustee will be deemed to have accepted a Bid only when the Bid has been approved by Order of the Bankruptcy Court.

## Objections

Objections, if any, to the Motion, or to any assumption and assignment, or rejection, of any unexpired leases or executory contract, shall be filed on the docket of the Bankruptcy Court and served such that each objection is actually received by the following parties on or before **3:00 p.m., prevailing Central time on [_____], 2018** (the "Objection Deadline"): (a) counsel for Trustee, Andrea M. Chase, Spencer Fane LLP, 1000 Walnut, Suite 1400, Kansas City, MO 64106, achase@spencerfane.com; and (b) Office of the United States Trustee's Office, Adam E. Miller, Trial Attorney, 400 East 9th Street, Room 3440, Kansas City, Missouri, adam.e.miller@usdoj.gov.

## Back-Up Bidders

If any Auction Participant whose Qualified Bid is a Successful Bid (a "Successful Bidder") fails to consummate the Transaction because of a breach or failure to perform on the part of such Successful Bidder, or for any reason other than the failure of the Bankruptcy Court to approve the terms of the Transaction, the Auction Participant that had submitted the next highest or otherwise best Qualified Bid for the same asset or assets of the estates at the Auction or prior to the Auction (the "Back-Up Bidder") will be deemed to be the Successful Bidder, and Trustee will be authorized to consummate the Transaction with such Auction Participant without further order of the Bankruptcy Court, and such Qualified Bid shall thereupon be deemed the Successful Bid; provided that upon being notified that its Qualified Bid has become the Successful Bid, the Auction Participant submitting such Qualified Bid shall within three (3) business days after such notification provide a Good Faith Deposit (unless such Auction Participant previously shall have provided a Good Faith Deposit that shall not have been returned as described below). Upon providing such Good Faith Deposit, such Auction Participant shall be deemed the Successful Bidder. If any Auction Participant fails to consummate the Transaction because of a breach or failure to perform on the part of such Auction Participant (including, without limitation, the failure to timely deposit the Good Faith Deposit), the process described

7

above may continue with other Auction Participants in decreasing order of the Qualified Bids as determined by Trustee, until an Auction Participant shall consummate the Transaction.

## Disposition of Good Faith Deposit

The Good Faith Deposit of the Successful Bidder(s), or a Back-Up Bidder that consummates a transaction in place of a Successful Bidder as provided for herein, shall be retained by Trustee and applied toward the payment of the Successful Bid(s) at the closing of the Transaction. If any Successful or Back-Up Bidder fails, for any reason other than Bankruptcy Court denial of the Transaction, to close a Transaction, then the Good Faith Deposit shall be retained by Debtor's estate as partial damages for the failure to consummate the Transaction (the "Forfeited Good Faith Deposit"). The Good Faith Deposit of all Qualified Bidders (other than the Successful Bidder(s), a Back-Up Bidder that consummates a Transaction in place of a Successful Bidder as provided for herein, or a Successful Bidder or a Back-Up Bidder that forfeits its deposit as liquidated damages as provided for herein) will be returned, without interest, to each such Qualified Bidder within ten business days after the closing of all proposed Transactions approved by the Bankruptcy Court at the Sale Hearing. For the avoidance of doubt, any Forfeited Good Faith Deposit shall be deemed property of the Debtor's bankruptcy estate and not subject to any liens.

## Modifications

Trustee may (a) determine which Qualified Bid, if any, is the highest or otherwise best offer(s); and (b) reject at any time before entry of an Order of the Bankruptcy Court approving the Successful Bid(s), any bid that, in the discretion of Trustee is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bid Procedures, or (iii) contrary to the best interests of Debtor's estate and its creditors. At or before the conclusion of the Auction, Trustee may impose such other terms and conditions upon Qualified Bidders as Trustee determines to be in the best interests of the Debtor's estate.

WA 11145717.5

## **Exhibit B**

**Stalking Horse Asset Purchase Agreement**

## AGREEMENT FOR SALE OF UTILITY SYSTEM

**THIS AGREEMENT** ("Agreement") is made and entered into this _____ day of August, 2018 (the "Effective Date"), by and between Central States Water Resources, Inc., a Missouri corporation, or its affiliate ("Buyer"), and Jill D. Olsen as Chapter 11 Trustee of Osage Water Company ("Seller") (collectively, "Parties").

**WITNESSETH:**

**WHEREAS**, on October 11, 2017, Osage Water Company filed a voluntary petition for relief under Chapter 11 of the U.S. Bankruptcy Code, which case is pending as Case No. 17-42759-drd11 in the U.S. Bankruptcy Court for the Western District of Missouri ("Bankruptcy Court"); and

**WHEREAS**, on October 26, 2017, Jill D. Olsen was appointed as the Chapter 11 Trustee of Osage Water Company; and

**WHEREAS,** Osage Water Company has developed and operates as a regulated *water and sewer* corporation *water and sewer* facilities, in the area more particularly described and depicted in the documents attached hereto as *Exhibit "A,"* situated in Camden County, Missouri (hereinafter the "System"); and

**WHEREAS**, Seller desires to sell, and Buyer desires to purchase, all the assets, property and real estate connected with the System including, but not limited to, all associated improvements for the conveyance of *water and sewer* to each of the customers connected to the service area (defined further below as "Assets"); and

**WHEREAS**, the Parties have reached an understanding with respect to the sale by Seller and the purchase by Buyer of all of the Assets (as hereinafter defined) of the System; and

WHEREAS, the transactions contemplated by this Agreement are subject to the approval of the Bankruptcy Court and will be consummated only pursuant to a Sale Order and such further orders to be entered by the Bankruptcy Court and applicable provisions of the Bankruptcy Code.

**NOW, THEREFORE**, it is mutually agreed that:

1.   <u>SALE OF ASSETS.</u>

For and in consideration of the receipt of the Purchase Price, as set forth below, and the covenants and promises hereinafter set forth, Seller agrees that on the closing date, Seller shall sell, transfer, assign and deliver to Buyer, or Buyer's designated affiliate, all of Seller's then existing assets pertaining to the provision of *water and/or sewer* service in the System located in Camden County, in the State of Missouri, and related properties, including, without limitation, the following:

(a)   The land, improvements thereon, easements, rights of way, permits and leases related to the System area depicted in *Exhibit "A"* and/or generally described in *Exhibit "B"* attached hereto;

(b)   All of Seller's *water and/or sewer* service facilities, equipment, lines, plant, pipes, manholes and appurtenances;

(c)   Any machinery and equipment such as meters, tools, devices, mobile work equipment, and all furniture, fixtures, machinery, supplies and other tangible items, if any, located in Camden County, Missouri, and used or held for use in connection with the System as generally described in *Exhibit "C"* attached hereto;

(d)   All of Seller's rights, title and interest in and to any franchise agreements, franchise rights, warranties, contracts, supply contracts, agreements, and customer deposits, if any, pertaining to, allocable to or arising out of the provision of *water and/or*

*sewer* service in Camden County, Missouri as generally described in *Exhibit "D"* attached hereto;

(e)    All of Seller's inventory, merchandise, contract rights, supplies, goodwill, and general intangibles including accounts receivable pertaining to the *water and/or sewer* service, except accounts receivable accrued prior to the closing of this sale;

(f)    All customer deposits held by Seller (the "Customer Deposits"); and

(g)    All assets not described which are located in Camden County, Missouri, and used or useful to operate the System, excepting therefrom, and from any other assets described in the paragraphs above of this Section 1, any and all cash, cash equivalents and banking deposits (other than customer deposits held by Seller) in existence prior to the closing of the sale contemplated under this Agreement.

The assets to be sold and delivered, as above described, are hereinafter collectively described as the "Assets."

## 2.    <u>CONVEYANCES OF REAL ESTATE.</u>

The real estate to be conveyed by Seller will include all facilities described herein and all interest of Seller in any *water and/or sewer* and other utility easements.  The real estate will be conveyed by trustee's deed, in a form satisfactory to Buyer, and will vest marketable title in fact in the Buyer.  Easements shall be assigned by written assignment or other means, in a form satisfactory to Buyer.

At Buyer's expense, Buyer shall obtain, within ten (10) business days of the date hereof, a Commitment to issue an Owner's Policy of Title Insurance to Buyer in the amount of the Purchase Price issued by a company authorized to issue title insurance in the state of Missouri. Within twenty (20) days after Buyer's receipt of said title insurance commitment, Buyer shall

notify Seller, in writing, of any objections thereto.  If there shall be no such notice of objection,

then any exceptions in such Commitment or deficiencies in the title to the property noted on such

Commitment shall be deemed waived and delivery of a deed in compliance with the terms of the

Commitment shall be deemed compliance with the terms of this Agreement.  If notice of any

objections to defects in the title, as defined above, shall be delivered to Seller, then Seller shall

have twenty (20) business days to correct the title and Closing shall be postponed until such

time, if necessary.  If Seller elects not to, or cannot, correct such defects, then Buyer, at Buyer's

option, may waive such defects and proceed to close or may cancel the contract and all

obligations hereunder shall be null and void.

3.    **REGULATORY APPROVAL.**

Seller and Buyer agree to make application to the Missouri Public Service Commission

for authority to complete the transfer of the Assets.  Buyer and Seller agree to assist the other in

this process when requested to do so.  Buyer and Seller shall act diligently and cooperate with

each other in obtaining final approval, if necessary, of the Missouri Department of Natural

Resources for transfer of Seller's permits, if any. Other than the Seller's attorney fees, any

expenses resulting from such approval shall be borne by the Buyer.

4.    **PURCHASE PRICE.**

Buyer agrees to pay to Seller at the Closing **Four Hundred Sixty Five Thousand**

**Dollars ($465,000.00)** for purchase of the Assets ("Purchase Price").

5.    **DEPOSIT.**

On the date of the Seller's acceptance of this Agreement, Buyer shall make a deposit

equal to ten percent (10%) of the Purchase Price (the "Deposit"). The Deposit shall be deducted

from the Purchase Price due by Buyer at closing. The Deposit is non-refundable regardless of

*Agreement for Sale of Utility System*

any termination of this agreement; provided, however, if the transactions hereby are not consummated because either the Seller accepts a Competing Offer pursuant to Section 10 or because Buyer is not the successful purchaser on the account of the Bankruptcy Court denying Buyer's offer because the Bankruptcy Court has accepted a higher and better Competing Offer, the Deposit shall be promptly returned to Buyer without setoff or deduction of any kind after the entry of the Bankruptcy Court order approving such a return.

6.    **<u>CLOSING.</u>**

The closing of the sale shall take place at a mutually agreeable location no later than thirty (30) days after the effective date of any necessary regulatory authority approval, satisfaction of Seller's Representations and Warranties and Conditions Precedent set forth herein, and Buyer having obtained financing under terms acceptable to Buyer in Buyer's sole discretion, or at such other time as the Parties hereto may mutually agree.  At the closing, Seller shall have delivered to Buyer such deeds, bills of sale, endorsements, assignments and other sufficient instruments of transfer and conveyance as shall be effective to vest in Buyer such title to the Assets to be sold as provided in this Agreement and as set forth in Section 6.D, and Buyer will deliver to Seller the Purchase Price.  From time to time, at Buyer's request and expense, whether at or after the closing and without further consideration, Seller shall execute and deliver such other instruments of conveyance and transfer and take such other action as Buyer reasonably may require to more effectively convey and transfer to Buyer any of the Assets to be sold hereunder, and will assist Buyer in the collection or reduction to possession of such Assets. Buyer will pay all sales, transfer and documentary taxes, if any, payable in connection with the sale, transfers and deliveries to be made to Buyer hereunder.

*Agreement for Sale of Utility System*

On the date of closing, Buyer shall accept and assume ownership and title to the Assets to be conveyed hereunder and Buyer shall assume liability, and become responsible, for all obligations in connection with the Assets going forward including the Customer Deposits, excepting responsibility for any liabilities and/or obligations of Seller in connection with the Assets that existed prior to the date of closing other than claims related to the refund of Customer Deposits.

7.    **SELLER'S REPRESENTATIONS AND WARRANTIES.**

The Seller represents and warrants as follows:

(a)    **Validity of Agreement.**

Subject to any necessary authorization from the Bankruptcy Court, Seller has the full power and authority to execute and deliver any documents necessary to consummate the transactions contemplated hereby and thereby.

(b)    **Title to Assets.**

Subject to Bankruptcy Court approval, Seller has the power and right to sell, assign and transfer and Seller will sell and deliver to Buyer, the Assets free and clear of all claims and liens, other than customer claims in the Customer Deposits.

(c)    **As Is, Where Is.**

Buyer is purchasing the Assets in reliance upon Buyer's personal inspection and knowledge of the Assets and in an "as-is" and "where-is" condition.  Seller makes no warranties or representations, express or implied, of any kind or nature, written, oral or otherwise.

8.    **BUYER'S REPRESENTATIONS AND WARRANTIES.**

Buyer represents and warrants as follows:

*Agreement for Sale of Utility System*

(a)      **Organization and Standing of Buyer**.

Buyer is a body corporate organized and existing under the constitution and laws of the State of Missouri, is in good standing, and has the requisite power to purchase the Assets which are to be sold pursuant to the terms of this Agreement.

(b)      **Authority**.

The execution and delivery of this Agreement by Buyer and the purchase of the Assets as contemplated hereby have been duly authorized by Buyer, and all necessary action on the part of Buyer has been taken to authorize the execution and delivery of this Agreement and to consummate the sale contemplated hereby.

9.      **CONDITIONS PRECEDENT FOR BUYER TO CLOSE.**

All obligations of Buyer under this Agreement are subject to the fulfillment or waiver, prior to or at the closing, of each of the following conditions:

(a)      **Regulatory Approval**.

The Missouri Public Service Commission and Missouri Department of Natural Resources shall have, if necessary, authorized or approved the sale, transfer or disposition of the Assets to Buyer from Seller, the proposed financing, and any schedule of compliance for proposed utility improvement projects for regulatory compliance deemed necessary by Buyer, each in form and substance (including without limitation with respect to the terms and conditions contained in such approval) acceptable to Buyer in Buyer's sole and absolute discretion.  Both Parties shall diligently pursue the required approvals and authorizations contemplated herein.  In the event the Parties are unable to obtain the required regulatory approval or authorization to complete the transactions

*Agreement for Sale of Utility System*

contemplated herein, Buyer may terminate this Agreement by providing written notice to Seller at Buyer's sole and absolute discretion.

(b)     **Representations and Warranties True at Closing**.

Seller's representations and warranties contained in this Agreement shall be true at the time of closing as though such representations and warranties were made at such time.

(c)     **Performance**.

Seller shall have performed and complied with all agreements and conditions required by this Agreement to be performed or complied with by Seller prior to or at the closing; including the payment of all taxes and assessments, or portions thereof, attributable to periods prior to or ending on the closing date, to include Public Service Commission assessments.

(d)     **Inspections**.

Completion of Buyer's examination, testing and inspection of the Assets and the securing of any and all licenses, permits or governmental approvals Buyer deems necessary for Buyer's proposed uses of the Assets, the results thereof to be satisfactory to Buyer, in its sole discretion. For purposes of this Agreement, the period from the date this Agreement is fully executed by both Parties to the date that is twenty (20) days prior to the closing, shall be referred to herein as the "Inspection Period." During the Inspection Period, Buyer, its employees, agents and contractors, shall have the right to enter onto any property owned by Seller that is related to the operation of the System, as it deems necessary or desirable, on reasonable prior notice to Seller to perform and complete architectural, environmental, engineering and/or other surveys, studies,

inspections and tests on the Assets; to review zoning laws and applicable building codes; to obtain all necessary city, county, and state zoning approval, site plan or subdivision approvals, licenses and permits to authorize the uses of the Assets as intended by Buyer.

(e)     **No Casualty**.

The Assets shall not have been adversely affected in any material way as a result of any strike, lockout, accident or other casualty or act of God or the public enemy, or any judicial, administrative or governmental proceeding.

(f)     **Bankruptcy Court Approval**.

This Agreement is subject to and contingent upon approval by the Bankruptcy Court and entry of an order of the Bankruptcy Court in a form reasonably acceptable to Seller and Buyer (the "Sale Order"). The Sale Order shall (i) approve this Agreement and the transactions contemplated hereby; (ii) approve the sale of the Assets to Buyer free and clear of all liens pursuant to 11 U.S.C. § 363(f); (iii) find that Buyer is a good faith purchaser entitled to the protections of 11 U.S.C. § 363(m); (iv) provide that the provisions of Federal Rule of Bankruptcy Procedure 6004(g) are waived and there will be no stay of execution of the Sale Order under Federal Rule of Civil Procedure 62(a); (iv) retain jurisdiction of the Bankruptcy Court to interpret and enforce the terms and provisions of this Agreement; and (vi) authorize and approve the results of the Auction.

(g)     **Correction of Legal Description**.

Osage Water Company obtained a Quit Claim Deed (the "Chelsea Rose Deed") from Hurricane Deck Holding Company for the parcel commonly known as Chelsea Rose ("Chelsea Rose"), which was directed by the judgment in *Osage Water Company, et al. v. Hurricane Deck Holding Company et al.*, Case No. 06CM-CC00014 in Camden County, Missouri. Seller has

-9-

discovered a defect in the legal description of the Chelsea Rose Deed. Seller shall obtain a corrected deed, an amended judgment, or other order or judgment conveying Chelsea Rose to Osage Water Company with the correct legal description.

    (h)    **Buyer's Right to Terminate**.

If Buyer determines, in its sole and absolute discretion, that any of the aforementioned conditions have not been met, Buyer shall have the right to terminate this Agreement at any time prior to closing upon written notice to Seller.

**10.**    **ADDITIONAL AGREEMENTS AND COVENANTS**

    (a)    **Definitions**.

    1.    "Alternative Transaction" shall mean (a) a transaction or series of transactions pursuant to which Seller sells, transfers, leases, or otherwise disposes of all or any material portion of the Assets to a person other than Buyer.

    2.    "Auction" shall mean the auction conducted by Seller pursuant to the Bidding Procedures Order for the Assets.

    3.    "Bidding Procedures" shall mean the rules, processes, bidding procedures and other matters set forth on Exhibit E.

    4.    "Bidding Procedures Order" shall mean a final order from the Bankruptcy Court, in a form and substance reasonably acceptable to buyer, approving the Bidding Procedures and certain other matters in connection with the potential Auction.

    (b)    **Other Bids**.

Seller may solicit bids from other prospective buyers for the sale of the Assets, on terms and conditions substantially the same in all respects to this Agreement (or more

*Agreement for Sale of Utility System*

favorable terms to Seller). No other offers or bids for the Assets shall be allowed after the entry of the Sale Order unless this Agreement is terminated pursuant to Section 9. If other bids are received pursuant to the Bidding Procedures, then Seller shall conduct an Auction.

(c)     **Matching Rights**.

In return for Buyer's commitments and undertakings hereunder, Buyer shall have the right and option, in its sole discretion, to match ("Matching Right") any competing offer or bid for the Assets or any related asset ("Competing Offer") that may be submitted by any person other than Buyer before or after the Effective Date and up to the close of the Auction in accordance with the Bidding Procedures Order, and to the extent Buyer exercises the Matching Right, Seller shall support that Buyer be declared by the Bankruptcy Court as the high bidder; provided, however, that if Buyer matches a Competing Offer, the other offeror can increase its offer over the matched offer with the Buyer having the ability to keep matching the highest offer until there are no other Competing Offers at which time the Buyer will be declared the high bidder.

(d)     **Buyer as Prevailing Bidder**.

If (i) Buyer is the Prevailing Bidder (as defined herein) at the Auction or (ii) Buyer is deemed the Prevailing Bidder under the Bidding Procedures Order, then the Seller shall use her best efforts to consummate the transactions contemplated by this Agreement as soon as possible.

(e)     **Buyer as Back-up Bidder**.

If an Auction is conducted, and Buyer is not the prevailing Party at the conclusion of such Auction (such prevailing Party, the "Prevailing Bidder"), Buyer may, in Buyer's

sole discretion, agree to serve as the back-up bidder (the "Back-up Bidder") and keep Buyer's bid to consummate the transactions contemplated by this Agreement on the terms and conditions set forth in this Agreement (as the same may be improved upon in the Auction) open and irrevocable until 11:59 p.m. on the date of closing of an Alternative Transaction with the Prevailing Bidder (the "Outside Back-up Date"). Following the Sale Hearing and prior to the Outside Back-up Date, if the Prevailing Bidder fails to consummate the Alternative Transaction as a result of a breach or failure to perform on the part of such Prevailing Bidder, the Back-up Bidder will be deemed to have the new prevailing bid, and Seller shall be required, without further order of the Bankruptcy Court, to consummate the transactions contemplated by this Agreement on the terms and conditions set forth in this Agreement (as the same may be improved upon in the Auction) with the Back-up Bidder pursuant to the procedures set forth in the Bidding Procedures Order.

## 11.    CONDITIONS PRECEDENT FOR SELLER TO CLOSE

All obligations of Seller under this Agreement are subject to the fulfillment, prior to or at the closing, of each of the following conditions:

(a)    **Representations and Warranties True at Closing**.

Buyer's representations and warranties contained in this Agreement shall be true at the time of closing as though such representations and warranties were made at such time.

*Agreement for Sale of Utility System*

(b)     **Performance**.

Buyer shall have performed and complied with all agreements and conditions required by this Agreement to be performed or complied with by Buyer prior to or at the Closing.

(c)     **Bankruptcy Court Approval.**

This Agreement is subject to and contingent upon approval by the Bankruptcy Court and entry of Sale Order approving this Agreement (as the same may be improved upon in the Auction) where the Buyer is either the Prevailing Bidder or Back-up Bidder at the conclusion of the Auction.

## 12.     INDEMNIFICATION.

Buyer shall, and hereby does agree to indemnify and hold harmless Seller, at any time after the closing, from and against all damages, penalties, losses, deficiencies, costs, expenses, obligations, fines, expenditures, claims, and liabilities, including reasonable attorneys' fees and expenses (each a "Loss" and collectively, "Losses") incurred or suffered by the Seller based upon, arising out of, or otherwise related to the Customer Deposits.

## 13.     FEES AND COMMISSIONS.

Each Party represents that it has not retained any broker or finder and is not paying, and is not obligated to pay, any finder's fee, commission or other transactional fee in connection with the transactions contemplated by this Agreement.  Each Party shall pay its own fees for attorneys, accountants, appraisers or others engaged by it in the course of negotiating or executing this Agreement and in closing and completing the transactions hereunder provided. Fees for professional advisors retained jointly by the Parties for their mutual benefit shall be equally divided.

*Agreement for Sale of Utility System*

**14.**    **BENEFIT.**

All of the terms of this Agreement shall be binding upon, and inure to the benefit of, and be enforceable by, the respective legal representatives of Seller, its successors and assigns, and the successors and assigns of Buyer.

**15.**    **GOVERNING LAW.**

This Agreement is being delivered and is intended to be performed in the State of Missouri, and shall be construed and enforced in accordance with the laws of such state and any applicable bankruptcy law.

**16.**    **COUNTERPARTS.**

This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.   This Agreement shall not be binding until executed by all Parties.

**17.**    **NO THIRD PARTY BENEFICIARIES.**

This Agreement shall not confer any rights or remedies upon any Person other than the Parties and their respective successors and permitted assigns.

**18.**    **ENTIRE AGREEMENT.**

This Agreement (including the documents referred to herein) constitutes the entire agreement between the Parties and supersedes any prior understandings, agreements or representations by or among the Parties, written or oral, to the extent they have related in any way to the subject matter hereof.

**19.**    **SUCCESSION AND ASSIGNMENT.**

This Agreement shall be binding upon and inure to the benefit of the Parties named herein and their respective successors and permitted assigns.   No Party may assign either this

*Agreement for Sale of Utility System*

Agreement or any of its rights, interests or obligations hereunder without the prior written approval of Buyer and Seller, said approval not to be unreasonably withheld.

### 20.    **HEADINGS.**

The section headings contained in this Agreement are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Agreement.

### 21.    **NOTICES.**

All notices, demands, consents, requests or other communications required to or permitted to be given pursuant to this Agreement shall be in writing, shall be given only in accordance with the provisions of this Section 21, shall be addressed to the Parties in the manner set forth below, and shall be conclusively deemed to have been properly delivered:  (a) upon receipt when hand delivered during normal business hours (provided that, notices which are hand delivered shall not be effective unless the sending Party obtains a signature of a person at such address that the notice has been received); (b) upon receipt when sent by facsimile if sent between the hours of 8:00 a.m. and 5:00 p.m. (the recipient's time) on a business day to the number set forth below with written confirmation of a successful transmission by the sender's facsimile machine; (c) when sent by electronic mail if (1) identified in the subject line as a notice under this Agreement, (2) sent between the hours of 8:00 a.m. and 5:00 p.m. on a business day to the e-mail address set forth below, and (3) acknowledged as received by the recipient, by reply or separate e-mail, (d) upon the day of delivery if the notice has been deposited in an authorized receptacle of the United States Postal Service as first-class, registered or certified mail, postage prepaid, with a return receipt requested (provided that, the sender has in its possession the return receipt to prove actual delivery); or (e) one (1) business day after the notice has been deposited with FedEx, United Parcel Service or other reliable overnight courier to be delivered by

*Agreement for Sale of Utility System*

overnight delivery (provided that, the sending Party receives a confirmation of actual delivery

from the courier).  The addresses of the Parties to receive notices are as follows:

If to Buyer:

        Josiah Cox, President
        Central States Water Resources, Inc.
        500 Northwest Plaza Drive #500
        St. Ann, MO 63074
        Facsimile: (314) 238-7201
        E-mail: jcox@cswrgroup.com

With a Copy to:

        James A. Beckemeier
        The Beckemeier Law Firm, LC
        13421 Manchester Road, Suite 103
        St. Louis, MO 63131
        Facsimile:  (314) 965-0127
        E-mail:jim@beckemeierlaw.com

If to Seller:

        Jill D. Olsen
        The Olsen Law Firm, LLC
        118 N. Conistor Ln., Suite B #290
        Liberty, MO 64068
        Facsimile: (816) 278-9493
        E-mail: trustee@olsenlawkc.com

With a Copy to:

        Andrea M. Chase
        Spencer Fane LLP
        1000 Walnut, Suite 1400
        Kansas City, MO 64106
        Facsimile:  (816)-474-3216
        E-mail:achase@spencerfane.com

Any Party may change the address to which notices, requests, demands, claims and other

communications hereunder are to be delivered by giving the other Party notice in the manner

herein set forth.

-16-

*Agreement for Sale of Utility System*

22.    **AMENDMENTS AND WAIVERS.**

No amendment of any provision of this Agreement shall be valid unless the same shall be in writing and signed by Buyer and Seller.   No waiver by any Party of any default, misrepresentation or breach of warranty or covenant hereunder, whether intentional or not, shall be deemed to extend to any prior or subsequent default, misrepresentation or breach of warranty or covenant hereunder or affect in any way any rights arising by virtue of any prior or subsequent such occurrence.

23.    **SEVERABILITY.**

Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

24.    **EXPENSES.**

Buyer and Seller shall each bear their own costs and expenses (including legal and accounting fees and expenses) incurred in connection with the preparation of this Agreement and activities necessary for Closing.

If this Agreement is terminated or if the transactions hereby are not consummated either because Seller accepts any Competing Offer pursuant to Section 10 or because Buyer is not the successful purchaser on account of the Bankruptcy Court denying Buyer's offer because the Bankruptcy Court has accepted a higher and better Competing Offer, Buyer shall have the right to assert an administrative expense against the Bankruptcy Estate by making proper application with the Court under Section 503(b) of the Bankruptcy Code in an amount equal to all Buyer's costs and out-of-pocket expenses incurred by Buyer in connection with its legal, environmental,

*Agreement for Sale of Utility System*

accounting, and business due diligence and the preparation and negotiation of this Agreement up to three percent (3%) of the Purchase Price (the "Expense Reimbursement"). The Expense Reimbursement shall be payable by Seller upon the first to occur of (i) Seller's closing of any alternate sale of the Assets to any other person or (ii) Seller's liquidation of assets sufficient to generate proceeds equal to or exceeding the amount of the Expense Reimbursement; <u>provided however</u>, such payment shall not be paid until the Seller's fees and expenses have been fully paid including, without limitation, any tax obligations and professional fees.

### 25.    <u>CONSTRUCTION.</u>

The Parties have participated jointly in the negotiation and drafting of this Agreement.  In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.  Any reference to any federal, state, local or foreign statute or law shall be deemed also to refer to all rules and regulations promulgated thereunder, unless the context requires otherwise.  The word "including" shall mean including without limitation.

### 26.    <u>INCORPORATION OF EXHIBITS.</u>

The Exhibits identified in this Agreement are incorporated herein by reference and made a part hereof.

### 27.    <u>DEFAULT; ATTORNEY'S FEES.</u>

If either Party shall default in their performance under this Agreement, which default results in the expenditure of attorneys' fees to enforce the terms of this Agreement or to recover damages for breach of this contract, then the prevailing Party shall be entitled to receive its

reasonable and actually incurred attorneys' fees and costs in addition to any other damages that the Party is entitled to recover at law or in equity.

28.  **AUTHORITY TO EXECUTE.**

Each person whose signature appears hereon represents, warrants and guarantees that he or she has been duly authorized and has full authority to execute this Agreement on behalf of the Party on whose behalf this Agreement is executed, subject to Bankruptcy Court approval.

**IN WITNESS WHEREOF**, the Parties have duly executed this Agreement as of the day and year first above written.

**SELLER**:

By: _____
    Jill D. Olsen, not individually but as Chapter 11 Trustee of the Osage Water Company bankruptcy estate

**BUYER**:

**Central States Water Resources, Inc.**

By:_____
    Josiah Cox, President

*Agreement for Sale of Utility System*

***<u>EXHIBIT "A"</u>***

<u>Service Area Description</u>

**1.**     <u>**CEDAR GLEN CONDOMINIUMS**</u>

    (a)     Location: Sunny Slope Drive, Camden County

    (b)     Description of Water System: 35,000 gallon hydro tank with deep well

    (c)     Description of Wastewater System: Sand filter with lift stations and force

main

**2.**     <u>**CHELSEA ROSE**</u>

    (a)     Location: Oak Bend Road, Camden County

    (b)     Description of Water System: 600 pressurized storage, deep well

    (c)     Description of Wastewater System: Partial force main and gravity

collection to an activated sludge facility

**3.**     <u>**HARBOUR BAY/CIMARRON BAY**</u>

    (a)     Location: MM40-Blue Water Bay Road, Camden County

    (b)     Description of Water System: 35,000 gallon hydro tank with deep well

    (c)     Description of Wastewater System: Force main to sand filter

**4.**     <u>**EAGLE WOODS/KK WASTEWATER**</u>

    (a)     Location: Highway KK and Red Barn Road, Camden County

    (b)     Description of Water System: 10,000 gallon storage tank to booster pumps

and pressurized tanks

    (c)     Description of Wastewater System: Force main and gravity collection

system to a sand filter

-20-

# *EXHIBIT "B"*

### Description of Land, Improvements thereon, Easements, Rights of Way, Permits and Leases

(The legal description(s) of the Land, Improvements thereon, Easements, Rights of Way shall be determined by survey and title commitments, which shall be inserted prior to Closing).

*Agreement for Sale of System*

## *EXHIBIT "C"*

Plant and Equipment
(meters, tools, devices, mobile work equipment, furniture, fixtures, machinery, supplies, and other tangible items)

*Agreement for Sale of System*

### _EXHIBIT "D"_

Rights Via Agreements, Contracts, Misc.
(franchise agreements, franchise rights, warranties, contracts, supply contracts, agreements, and customer deposits)

_Agreement for Sale of System_

EXHIBIT E
[Bidding Procedures]

*Agreement for Sale of System*

# Exhibit C

**Transaction Notice**

IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | Case No.  17-42759-drd11 |
| OSAGE WATER COMPANY, | ) | |
| | ) | |
| Debtor. | ) | |

**NOTICE OF (A) THE SALE OF SUBSTANTIALLY ALL OF
DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES,
AND INTERESTS (B) THE POSSIBLE ASSUMPTION AND ASSIGNMENT, OR
REJECTION, OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES,
AND (C) RELATED RELIEF**

**TO ALL PERSONS RECEIVING THIS NOTICE, PLEASE TAKE NOTICE OF
THE FOLLOWING:**

1.      On [ ], 2018, Trustee filed her Motion to Approve (a) Sale of Substantially All of Debtor's Assets Free and Clear of All Liens, Interests, Claims and Encumbrances, and Related Procedures and Bid Protection Pursuant to 11 U.S.C. § 363, (b) the Potential Assumption and Assignment, or Rejection, of Certain Executory Contracts and Unexpired Leases; and (c) Related Relief Pursuant to 11 U.S.C. §§ 102 and 105 [Docket No. _____] (the "Motion").

2.      In the Motion, among other things, Trustee seeks an order of the Bankruptcy Court (a) authorizing her to sell, pursuant to Bid Procedures attached hereto as **Exhibit A**, outside the ordinary course of business and free and clear of all liens, claims, encumbrances, and interests, all of Debtor's right, title and interest substantially all of the assets owned by Debtor (collectively, the "Assets") to the Stalking Horse Purchaser,[1] (b) authorizing the Trustee to assume and assign the Desired 365 Contracts (as defined below) and (c) otherwise granting all necessary and appropriate related relief. A copy of the Motion, the Bid Procedures Order identified below and other pleadings in the bankruptcy case may be obtained upon written request to Andrea M. Chase, Spencer Fane LLP, 1000 Walnut, Suite 1400, Kansas City, MO 64106, achase@spencerfane.com.

**The Sale Process**

3.      The Bid Procedures Order sets forth the following dates in connection with the transactions contemplated in the Motion:

| **Event** | **Date** |
|---|---|
| | |

---

[1]  Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion and Bid Procedures.

| Bid Deadline | **[21 days after Bid Procedures Order], 5:00 p.m. prevailing Central Time** |
|---|---|
| Auction | **[35 days after Bid Procedures Order], 9:30 a.m. prevailing Central Time** |
| Contract/Lease and Sale Hearing Objection Deadline | **[42 days after Bid Procedures Order],  3:00 p.m. prevailing Central Time** |
| Sale Hearing | **[To be determined by the Court] __.m. prevailing Central Time** |

4.      An initial hearing on the Motion, focusing on approval of the Stalking Horse Purchaser, Stalking Horse APA, and the Bidding Procedures, was held on [ ], 2018**.** Thereafter, the Bankruptcy Court entered that certain Order Approving Procedures for the Solicitation of Offers for (a) the Sale of Substantially All of Debtor's Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (b) the Possible Assumption and Assignment, or Rejection, of Certain Executory Contracts and Unexpired Leases, and (c) Related Relief [Docket No. ___] (the "Bid Procedures Order").

5.      Pursuant to the Bid Procedures Order, if a Qualified Bid (other than the Stalking Horse APA) has been submitted for the Assets on or before **[_____], 2018** in accordance with the Bid Procedures, Trustee will conduct an auction (the "Auction") on **[_____], 2018 at 9:30 a.m., prevailing Central time**, with respect to such Qualified Bids (including the Stalking Horse APA) in order to determine the Successful Bid(s) to submit for approval by the Bankruptcy Court at the Sale Hearing. Qualified Bidders seeking to participate as a bidder at the Auction must comply with the Bid Procedures.

6.      The Sale Hearing on the Sale Motion shall be held on **[_____], 2018, at [_____], prevailing Central time**, in the Courtroom 4B before the Honorable Dennis R. Dow, United States Bankruptcy Judge, at the United States Bankruptcy Court, Western District of Missouri, 80 Lafayette Street, Jefferson City, MO.

## Additional Information Regarding Any Objection

7.      Objections, if any, to all or any part of the Motion or the assumption and assignment, or rejection, of Desired 365 Contracts shall be filed on the docket of the Bankruptcy Court and served such that each objection is actually received by the following parties on or before the relevant objection deadline specified above: (a) counsel for Trustee, Andrea M. Chase, Spencer Fane LLP, 1000 Walnut, Suite 1400, Kansas City, MO 64106, achase@spencerfane.com; and (b) Office of the United States Trustee's Office, Adam E. Miller, Trial Attorney, 400 East 9th Street, Room 3440, Kansas City, Missouri, adam.e.miller@usdoj.gov.

8.      Any person failing to timely file an objection to the Motion shall be barred from objecting to the Motion, including the sale of the Assets free and clear of any and all liens, claims, encumbrances, and interests and will be deemed to consent to the Transaction(s).

WA 11145717.5

9.     Copies of the Motion, the Bid Procedures, and the Bid Procedures Order, together with any and all exhibits, schedules, and attachments thereto, may be obtained upon written request to Andrea M. Chase, Spencer Fane LLP, 1000 Walnut, Suite 1400, Kansas City, MO 64106, achase@spencerfane.com.

### The Unexpired Lease and Executory Contract Process

In connection with the Transaction(s), Trustee may seek to assume certain executory contracts and unexpired leases (collectively, the "Desired 365 Contracts") and rights thereunder and assign such executory contracts and unexpired leases and rights thereunder to a Successful Bidder. Alternatively, the Trustee may seek to reject any unexpired leases or executory contracts that are not Desired 365 Contracts. You may be receiving this notice because you are identified as a party to one or more unexpired leases or executory contracts that may be rejected, or may be assumed by the Debtors and assigned to a Successful Bidder. IF YOU BELIEVE YOU ARE RECEIVING THIS NOTICE AS A PARTY TO ONE OR MORE OF THE DEBTORS' UNEXPIRED LEASES OR EXECUTORY CONTRACTS, YOU SHOULD LOOK AT THE PROPOSED CURE SCHEDULE ATTACHED AS EXHIBIT B.

The Proposed Cure Schedule in Exhibit B (the "Cure Schedule") lists the maximum amount that the trustee believes that a Successful Bidder(s) may be required to pay to cure all monetary defaults with respect to each of the Desired 365 Contracts that may be sought to be assumed and assigned pursuant to the Sale Motion (the "Cure Amounts"). The inclusion of any Desired 365 Contract in the Cure Schedule shall not be deemed to be an admission by the trustee that such Desired 365 Contract is an "executory contract" or "unexpired lease" for purposes of Section 365 of the Bankruptcy Code, and the trustee reserves all rights in connection with same. The trustee proposes to require the Successful Bidder(s) to pay such Cure Amounts directly to the listed Desired 365 Contract counterparties to cure all defaults related to the Desired 365 Contracts as a condition to assumption and assignment of the applicable Desired 365 Contract. The Trustee believes that the Successful Bidder(s) will provide adequate assurance of future performance under each respective Desired 365 Contract.

The trustee may amend the Cure Schedule by sending a new or amended Cure Schedule at any time prior to the Sale Hearing solely to the counterparties affected. Any party to an unexpired lease or executory contract that desires to receive electronic notice of any amendment to the Cure Schedule must deliver a written request for such electronic notice, including an appropriate electronic address, to counsel for trustee no later than [___].

After the assumption and assignment of any Desired 365 Contracts and rights thereunder, the trustee and the Successful Bidder(s) will be relieved of any liability to any Desired 365 Contract counterparties or other third parties that accrued or arose before the date of assumption. Further, each such Desired 365 Contracts will remain in full force and effect for the benefit of any Successful Bidder(s) in accordance with its terms, notwithstanding any provision in any such Desired 365 Contract which prohibits, restricts or conditions such assignment or transfer thereof or its rights thereunder.

IF NO PARTY OBJECTS TO THE PROPOSED ASSUMPTION AND ASSIGNMENT OF A DESIRED 365 CONTRACT AND RIGHTS THEREUNDER OR THE CURE AMOUNT OR ADEQUATE ASSURANCE OF FUTURE PERFORMANCE BEFORE THE OBJECTION

DEADLINE: (I) SUCH DESIRED 365 CONTRACT AND RIGHTS THEREUNDER MAY BE ASSUMED AND ASSIGNED, IN WHICH CASE ALL COUNTERPARTIES THERETO WILL BE DEEMED TO HAVE CONSENTED AND WILL BE BOUND BY ORDER OF THE COURT TO SUCH ASSUMPTION AND ASSIGNMENT; (II) ANY SUCCESSFUL BIDDER WILL ENJOY ALL OF THE RIGHTS AND BENEFITS UNDER SUCH DESIRED 365 CONTRACT WITHOUT THE NECESSITY OF OBTAINING ANY COUNTERPARTY'S WRITTEN CONSENT TO THE ASSUMPTION AND ASSIGNMENT THEREOF; (III) SUCH COUNTERPARTIES WILL BE FOREVER BARRED AND ESTOPPED FROM ASSERTING OR CLAIMING AGAINST THE DEBTORS, THE DEBTORS' ESTATES, ANY SUCCESSFUL BIDDER, OR AN ASSIGNEE THAT ANY ADDITIONAL AMOUNTS, OTHER THAN THE CURE AMOUNT, ARE DUE OR DEFAULTS EXIST UNDER SUCH DESIRED 365 CONTRACT, OR THAT CONDITIONS TO ASSIGNMENT MUST BE SATISFIED UNDER SUCH DESIRED 365 CONTRACT FOR THE PERIOD PRIOR TO THE EFFECTIVE DATE; AND (IV) ANY CLAIMS THAT HAVE BEEN FILED ON ACCOUNT OF SUCH DESIRED 365 CONTRACT SHALL BE DISALLOWED AND EXPUNGED IN THESE CASES AS TO THE DEBTOR'S ESTATE.

Respectfully submitted,

**SPENCER FANE LLP**

By: /s/_____

| Eric L. Johnson | MO Bar No. 53131 |
| Andrea M. Chase | MO Bar No. 66019 |
| Zach R.G. Fairlie | MO Bar No. 68057 |

1000 Walnut Street, Suite 1400
Kansas City, MO 64106
Office:  816-474-8100
Facsimile:  816-474-3216
ejohnson@spencerfane.com
achase@spencerfane.com
zfairlie@spencerfane.com

COUNSEL FOR TRUSTEE

WA 11145717.5

# EXHIBIT A

**[Bid Procedures]**

WA 11145717.5

## **EXHIBIT B**

**[Cure Notice]**

WA 11145717.5